NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| NXIVM CORPORATION, formerly known as EXECUTIVE SUCCESS PROGRAMS, INC.; and FIRST PRINCIPLES, INC., | : : : : : | **Hon. Dennis M. Cavanaugh** |
| Plaintiffs, | : : | **OPINION** |
| v. | : : | Civil Action No. 06-CV-1051 (DMC) |
| MORRIS SUTTON; ROCHELLE SUTTON; THE ROSS INSTITUTE; RICK ROSS a/k/a "RICKY ROSS"; STEPHANIE FRANCO; PAUL MARTIN, PH.D.; and WELLSPRING RETREAT, INC., | : : : : : : : | |
| Defendants. | : | |
| RICK ROSS, | : : | |
| Counter-Claim Plaintiff, | : : | |
| v. | : : | |
| KEITH RANIERE, NANCY SALZMAN, KRISTIN KEEFFE, INTERFOR, INC., JUVAL AVIV, JANE DOE and JOHN DOES 1-10, | : : : : : | |
| Counter-Claim Defendants. | : : | |
| INTERFOR, INC. and JUVAL AVIV, | : : | |
| Crossclaimants, | : : | |
| v. | : : | |
| NXIVM CORPORATION, KEITH RANIERE, NANCY SALZMAN and KRISTIN KEEFE, | : : : : | |
| Crossclaim Defendants. | : | |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon motion by Plaintiffs NXIVM Corporation, formerly known as Executive Success Programs, Inc., and First Principles, Inc. (collectively "Plaintiffs") pursuant to the Federal Rules of Civil Procedure 54(b) and 15(a), requesting revision of this Court's June 27, 2007 opinion and permission to re-plead the Second, Fifth and Sixth Counts of Plaintiffs Amended Consolidated Complaint. Pursuant to Rule 78 of the Federal Rules of Civil Procedure, no oral argument was heard. After carefully considering Plaintiffs' submissions, and based upon the following, the Court concludes that Plaintiffs' motion is **denied**.

## I.   BACKGROUND

The present matter arose as a consequence of the dissemination of NXVIM material alleged to contain confidential and proprietary information, including trade secrets. The case was originally commenced as two separate actions, Docket Number 1:03-1051 consolidated with, and under, Docket Number 1:03-976, in the Northern District of New York in August, 2003.[1] On April 19, 2005, Plaintiffs filed their Amended and Consolidated Complaint. Thereafter, on March 7, 2006, the District Court for the Northern District of New York granted the Suttons' motion to transfer of venue pursuant to 28 U.S.C. § 1404(a) and 28 U.S.C. § 1406.

The NXIVM Corporation identifies itself as being in the business of "conducting Executive Success training programs for managers, chief executives, business professionals and other individuals concerned with honing their analytic and logic skills, particularly as they relate to setting and achieving goals." Morris Sutton and Rochelle Sutton ("the Suttons") hired Rick Ross ("Mr.

---

[1] Notably, Dr. Hochman is not a named Defendant in this action. Previously, NXIVM filed a complaint against Dr. Hochman in the Central District of California relying on the same set of facts and seeking damages as well as injunctive relief. The parties settled that lawsuit and subsequently, the Hochman Affidavit was procured. NXIVM Corp. v. Hochman, No. 06-04176 (R/RZ) (C.D. June 30, 2006).

Ross") of the Rick Ross Institute as an intervention specialist for purposes of dissociating their son Michael Ross ("Michael"), a student of NXIVM, from the institution. Although Michael refused to provide Mr. Ross with confidential course materials, Mr. Ross eventually obtained the confidential course materials through Michael's step-sister, Stephanie Franco ("Ms. Franco"). Mr. Ross provided these materials to John Hochman, M.D. ("Dr. Hochman") and Paul Martin, Ph.D. ("Dr. Martin") who subsequently wrote the articles in question. Mr. Ross posted the Hochman article on his website for the Rick Ross Institute and also, later published both the Martin and Hochman articles on a different website he controls, known as www.cultnews.com. Mr. Ross, not Dr. Hochman, added Dr. Hochman's credentials and the title, *A Forensic Scientist Evaluates ESP*, to the Hochman article.

Plaintiffs allege that the articles published by Defendants left readers with the impression that NVIXM was a cult.[2] In its June 27, 2007 opinion and order, this Court dismissed the Second, Fifth and Sixth Counts of Plaintiffs' complaint. On May 22, 2009, Plaintiffs moved before this Court to re-plead the following causes of action: 1) the Second Count for product disparagement; 2) the Fifth Count for tortious interference with contractual relations; and 3) the Sixth Count for interference with prospective economic advantage (the Fifth and Sixth Counts, collectively, "tortious interference").

---

[2] This Opinion incorporates by reference the facts as established in this Court's prior decision, dated June 27, 2007, and in particular, with respect to the Hochman and Martin articles, this Court adopts the facts contained therein. "Specifically, Defendant Martin authored two pieces: *A Critical Analysis of the Executive Success Programs, Inc.*, and *Robert Jay Lifton's Eight Criteria of Thought Reform as Applied to the Executive Success Programs* ('the Martin articles')." "The Martin article quotes from portions of Plaintiffs' protected materials, allegedly mischaracterizing the nature of Plaintiffs' materials and Plaintiffs' training programs." "Hochman [authored] a piece entitled, *A Forensic Psychiatrist Evaluates ESP* ('the Hochman article')." "The Complaint alleges that this piece also mischaracterizes Plaintiffs' materials and training programs, misleading readers regarding the nature of Plaintiffs and their programs."

In that opinion, this Court considered the issue whether the statements in the articles that were posted on the internet were "non-actionable opinions, actionable opinions mixed with fact or actionable opinions that [were] impliedly based on unknown facts."[3]  This Court determined that the Second, Fifth and Sixth Counts were legally deficient because the quotes in the allegedly damaging articles were protected statements of opinion which cannot be the basis for legal claims of disparagement or tortious interference.

The Hochman Affidavit indicates that Dr. Hochman was unaware that the materials provided by Mr. Ross contained any trade secret information or that such materials had been procured in violation of any sort of confidentiality obligation. Dr. Hochman now asserts the following:

5.      I now understand that the Protected Materials given to Mr. Ross by Ms. Franco were confidential and proprietary in nature to ESP . . .

6.      Mr. Ross asked me to use the Protected ESP Materials to prepare a written report . . .Based upon the fact that Mr. Ross told me he was going to use the report for the singular purpose of persuading the Student that he was under the undue influence of the ESP organization I concluded that Mr. Ross believed that ESP was a harmful organization (the "Hochman Assumption").

8.      In preparing my Report, I relied almost entirely on the Protected Materials provided to me by Mr. Ross.  I also utilized some materials then available from the ESP website.  My knowledge of these items informed my Report. Mr. Ross never used the name "NXVIM" in his conversations with me and nowhere within the Protected materials or the ESP website was NXIVM mentioned. . .

9.      The Hochman Assumption no doubt played a role in causing me to write the Report in a manner to support a finding that ESP was harmful and to incorporate the negative views and strong bias I concluded that Mr. Ross personally held regarding ESP. . .My report was based almost exclusively on information Mr. Ross provided.

10.      I never intended the Report to represent a scientific or objective study of the

_____

[3]NXVIM, et al v. Sutton, No. 06-1051 (D.N.J. filed June 27, 2007).

4

ESP organization or its programs.  I did not attempt to conduct the sort of objective study, investigation or analysis that would have been necessary if it were a true scientific study. . .

Aff. ¶¶ 5, 6, 8, 9,10.  Dr. Hochman also indicates that he executed and delivered a Cease and Desist letter to Mr. Ross in or on September, 2006 requesting that the report and any references to the report be removed from the website.

Nancy T. Ammerman, Ph.D. ("Dr. Ammerman") conducted a report, *Report to the Justice and Treasury Department Regarding Law Enforcement Interest with the Branch Davidians in Waco, Texas* (the "Ammerman Report"), that Plaintiffs allege now holds relevance as a consequence of the recent Hochman Affidavit.  The Ammerman Report states that "The [Cult Awareness] Network and Mr. Ross have a direct ideological (and financial) interest in arousing suspicion and antagonism against what they call 'cults.'" Further, the report indicates that "[a]lthough these people often call themselves 'cult experts,' they are certainly not recognized as such by the academic community." Moreover, "Mr. Ross and any ex-members he was associated with should have been seen as questionable sources of information[,] [h]aving no access to information from the larger social science community[.]"

## II.   STANDARD OF REVIEW

Generally, an issue which has already been litigated and decided in a case cannot be reconsidered in the same case. <u>E. Pilots Merger Cmte. v. Cont'l Airlines, Inc.</u>, 279 F. 3d 226, 232 (3d Cir. 2002).  However, under Rule 54(b) a court has discretion to revise an order which did not adjudicate all of the claims or the rights and liabilities of all the parties at any time before the entry of final judgment which adjudicates all of the claims, rights and liabilities. Fed. R. Civ. P. 54(b). The court may exercise its discretion and revise the prior opinion and order when new evidence has

become available.  Hamilton v. Leavy, 322 F.3d 776, 787 (3d Cir. 2003).  However, the court may

only revise an order based on the availability of new evidence if the "new evidence differs materially

from the evidence of record when the issue was first decided and if it provides less support for that

decision."  Id.

Under Rule 15(a), leave to amend "shall be freely given when justice so requires."  Fed. R.

Civ. P. 15(a).  Leave to amend may be granted even after a judgment of dismissal has been entered.

Foman v. Davis, 371 U.S. 178, 182 (1962); NAACP v. Town of Harrison, 907 F.2d 1408, 1417 (3d

Cir. 1990).  In determining whether to grant leave to amend the court will consider: 1) whether the

amendment would prejudice the non-moving party; 2) whether the plaintiff's motion was  unduly

delayed; and 3) whether the proposed amendment is made in bad faith.  Eisai Co. v. Teva Pharm.

USA, Inc., 347 F.R.D. 445, 448 (D.N.J. 2007).  Absent the foregoing factors, the court will proceed

in the analysis by considering whether the proposed amendment would prove futile if permitted.  Id.

**III.    DISCUSSION**

Plaintiffs contend that they are entitled to re-plead these counts because there is new evidence

from Dr. Hochman that misinformation provided by Mr. Ross served as the foundation for his report

and compelled Dr. Hochman to write the report from a perspective.  Additionally, Plaintiffs argue

that Dr. Hochman's affidavit to that effect, together with the Ammerman Report, constitute contrary

evidence not previously before the Court evidencing the argument that the Hochman Report was

neither intended to be scholarly nor academic.  Plaintiffs further suggest that this new evidence calls

into question the Martin Article.  In this case, the revision of this Court's June 27, 2007 opinion is

not proper because the Hochman Affidavit fails to provide any evidence that would affect this

Court's prior ruling, as discussed below.

**A.     Second Count  - Product Disparagement**

*i.     Fed. R. Civ. P. 54(b)*

Given that the order dismissing the product disparagement and tortious interference claims was not final, Plaintiffs argue that in light of the new evidence presented, the Court, in its discretion, should permit Plaintiffs to re-plead the product disparagement claim pursuant to Fed. R. Civ. P. 54(b).  As previously explained in the Court's earlier opinion in this action, three factors are critical in determining whether Defendants' statements are actionable: (1) the content, (2) the verifiability, and (3) the context of the challenged statement. <u>Ward v. Zelikovsky</u>, 136 N.J. 516, 532 (1994).

In determining whether a statement is actionable as defamatory, "[c]ourts do not automatically decide a case on the 'literal words of the challenged statement.'" <u>Ward</u>, 136 N.J. at 532; <u>see</u> Immuno AG v. Moor-Jankowski, 77 N.Y.2d 235, 243 (1991).  "Rather, courts must consider the 'impression created by the words used as well as the general tenor of expression.'" <u>Id</u>. "The listener's reasonable interpretation, which will be based in part on the context in which the statement appears, is the proper measure for whether the statement is actionable."  <u>Id</u>. (citing Restatement (Second) of Torts § 566, cmt. c. (1977)). As previously stated, the Hochman and Martin articles "do not explicitly state that Plaintiffs' organization constitutes a cult."  "Rather, the articles state that NXIVM has some characteristics of a cult and cult-like elements."  Therefore, this Court concluded that a "reasonable reader would not believe that the articles contain assertions of fact that Plaintiffs' organization constitutes a cult."  The new evidence proffered by Plaintiffs does not alter the Court's previous analysis that a reasonable person reading the statements articulated in the Hochman or Martin articles would not interpret the statements contained therein as assertions of fact.

To reiterate, "[a] reasonable reader would discern that the authors' conclusions do not constitute fact, but rather, the opinion of an individual who is writing from a particular perspective."  Further, the fact that Dr. Hochman contends his work is the product of bias, and not the product of objective analysis, merely reinforces the conclusion that the article is written from a perspective and would not be interpreted as fact.   Moreover, the Ammerman Report is irrelevant in assessing whether a reasonable person would interpret the articles as opinion or fact.

As previously stated by this Court, "'[c]ult' is not a term with concrete meaning" and, therefore, "when an individual states or opines that a group constitutes a 'cult' or is 'cult-like,' no verifiable fact is communicated to the listener or reader."  Admission of the Hochman Affidavit does not affect the verifiability of the statements contained in either the Hochman or Martin articles. The Hochman Affidavit does not contain any new evidence that would tend to show these were statements of fact.   Additionally, the Ammerman Report is irrelevant as to whether or not the Hochman and Martin articles communicate verifiable facts.

Moreover, as previously stated by this Court,  in terms of context, "a person that accesses the Ross Defendants websites would understand that it offers a particular viewpoint on cults and their techniques."  The Hochman Affidavit does not contain any new information altering the context in which a reasonable reader would view the websites, and as noted above it could not have affected the perception of a reasonable reader. The fact that Dr. Hochman contends that the assertions made in his article were based on misinformation, neither changes the character of the assertions made nor converts statements of opinion into statements of fact in reasonable minds.  Further, other than the notable disrepute expressed towards Mr. Ross, the Ammerman Report is irrelevant because it does not affect the context in which the challenged statements are read.

    *ii.*  *Fed. R. Civ. P. 15(a)*

"The trial court's discretion under Rule 15 [ ] must be tempered by considerations of prejudice to the non-moving party, for undue prejudice is 'the touchstone for the denial of leave to amend.'" Heyl & Patterson International, Inc. v. F. D. Rich Housing, Inc., 663 F.2d 419, 425 (3d Cir. 1981). In assessing the issue of prejudice, it is relevant to consider "whether allowing an amendment would result in additional discovery, cost, and preparation to defend against new facts or new theories." Cureton v. NCAA, 252 F.3d 267, 273 (3d Cir. 2001). "In the absence of substantial or undue prejudice, denial must be grounded in bad faith or dilatory motives, truly undue or unexplained delay, repeated failure to cure deficiency by amendments previously allowed or futility of amendment." Id. "Delay alone is not sufficient to justify denial of leave to amend," unless it unduly prejudices the non-moving party. Eisai Co., 247 F.R.D. at 448 (citing Adams v. Gould, 739 F.2d 858, 868 (3d Cir. 1984)); Cornell & Co. v. Occupational Safety & Health Review Com., 573 F.2d 820, 823 (3d Cir. 1978). "Delay becomes undue [ ] when it places an unwarranted burden on the court or an unfair burden on the opposing party." Id. (citing Cureton, 252 F.3d at 273-74).

Re-pleading causes prejudicial delay by unnecessarily extending the proceedings and expanding the issues to include those which the Court has affirmatively determined are not viable. Further, this case includes a cause of action against Plaintiff NXIVM for a breach of indemnification duties to pay legal fees incurred by Defendant and allowing Plaintiffs to re-plead will increase these fees. This case was originally filed in August, 2003; and resolution has been delayed by repeated changes in counsel and failures to provide discovery which have led to monetary sanctions. The current round of depositions and discovery was conducted under the belief that the Second, Fifth and

Sixth Counts were dismissed, and amendment by re-pleading those counts invites requests for additional discovery including requests that witnesses be re-deposed. Plaintiff NXIVM has also stated that it will need to conduct new depositions of its three key witnesses, and the parties confront the prospect of still another motion to dismiss. Both of these actions will increase the legal fees the Defendants incur, entail additional discovery and require additional preparation for claims this Court has determined to be futile. Granting leave to amend imposes undue delay and unfair prejudice on the non-moving party and permits amendment where the Court has determined such claims are futile. Therefore, leave to amend to re-plead the product disparagement claim is denied.

### B.   Counts Five and Six - Tortious Interference

In the previous opinion, this Court concluded that "[c]laims for tortious interference with contractual relations and economic advantage cannot lie where plaintiffs may not prevail on a product disparagement claim." Plaintiffs contend that, given the Court's conclusion that such tortious interference claims are dependent upon a successful showing that a viable claim for product disparagement exists, Plaintiffs should also be granted leave to re-plead the tortious interference claims contained in Counts Five and Six. However, this Court has determined that permitting Plaintiffs to re-plead a product disparagement claim that would ultimately prove futile, along with the undue and prejudicial delay imposed on the non-moving party, is unwarranted. Therefore, Plaintiffs' motion to re-plead the tortious interference claims is denied.

**IV.**     <span style="text-decoration: underline">CONCLUSION</span>

For the reasons stated, it is the decision of the Court that Plaintiffs' motion to re-plead is

**denied**.  An appropriate Order accompanies this Opinion.


     /s/ Dennis M. Cavanaugh
     Dennis M. Cavanaugh, U.S.D.J.

Date:          November 30, 2009
Orig.:         Clerk
cc:            Counsel of Record
               The Honorable Mark Falk, U.S.M.J.
               File

11