NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| NXIVM CORPORATION, f/k/a EXECUTIVE SUCCESS PROGRAMS and FIRST PRINCIPLES, INC., <br><br> Plaintiffs, <br><br> v. <br><br> ESTATE OF MORRIS SUTTON, ROCHELLE SUTTON, THE ROSS INSTITUTE, RICK ROSS a/k/a "RICKY", STEPHANIE FRANCO, PAUL MARTIN, Phd., and WELLSPRING RETREAT, INC., <br><br> Defendant. | Hon. Dennis M. Cavanaugh <br><br> **OPINION** <br><br> Civil Action No. 06-cv-1051 (DMC) (MF) |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon Cross Motions for Summary Judgment by Interfor, Inc. ("Interfor") and NXIVM Corp. ("NXIVM"). (Oct. 21, 2012, ECF No. 462 and Jan. 18, 2013, ECF No. 478). Pursuant to FED. R. CIV. P 78, no oral argument was heard. Based on the following and for the reasons expressed herein, Interfor's Motion for Partial Summary Judgment and NXIVM Corp.'s Cross Motion for Partial Summary Judgment are both **denied**.

I. **BACKGROUND**[1]

On August 8, 2003, NXIVM initiated this action by filing a complaint in the Northern District of New York against Rick Ross ("Ross") and others for injunctive relief and damages arising out of

---

[1] This case has a long, at times confusing, and often acrimonious history. The Court chooses not to recite the factual history of the entire case, as the facts are well known to the parties. Instead, this Court focuses only on the facts relevant to the cross-motion at hand. The facts in this section are taken from the parties pleadings.

1

Ross's posting of two articles on his website that, among other things, suggested that NXIVM is a cult. The articles disclosed materials obtained from NXIVM that NXIVM maintains are proprietary and trade secrets. NXIVM retained Interfor, a private investigation firm, by written agreement on September 2, 2004, to conduct an investigation on its behalf concerning the disappearance of a former NXIVM student, Kristin Snyder. Ross, on his website, contended that Snyder had committed suicide as a result of her involvement with NXIVM. By early November 2004, Interfor's investigation had expanded to include a general investigation of Ross himself (the "Ross Investigation").

On November 23, 2004, NXIVM signed an indemnity agreement (the "Indemnity Agreement") which is the focus of the present motion whereby NXIVM agreed to indemnify Interfor for:

> Any cost or expense . . . related to or in any way in connection with or arising out of [Interfor's] investigation, provided that such indemnity shall be limited to that part of such investigation, or any part thereof, which was requested and/or agreed to by NXIVM/ESP or disclosed to NXIVM/ESP by Interfor without any objections thereto by NXIVM/ESP.

(Indemnity Agreement, Declaration of Robert S. Landy, Jan. 12, 2012 ("Landy Dec."), Ex. 9, ECF No. 469-9). The Indemnity Agreement also provided that:

> Costs and expenses, as the term is used herein, shall include but not be limited to, attorney fees and any other cost or expense imposed upon or incurred by Interfor in the defense, investigation or settlement of any matter that is subject to this Indemnity Agreement.
> * * *
>
> In the further event that NXIVM/ESP shall fail to so defend and/or indemnify Interfor, then in such instance Interfor shall have full rights to defend, pay or settle any said claim on its behalf without notice to undersigned and with full rights to recourse against the undersigned for all fees, costs, expenses and payments made or agreed to be paid or discharge said claim.

(Id.) Finally, the Indemnity Agreement provided that "[u]pon default, NXIVM/ESP further agrees to pay all reasonable attorney fees necessary to enforce this agreement." (Id.) NXIVM sent the Indemnity Agreement to Interfor by fax at 3:25 p.m. on November 23, 2004. (Id.)

2

On July 11, 2006, Ross served a non-party subpoena on Interfor for records generated in connection with the Investigation. NXIVM hired counsel for Interfor and paid Interfor's legal bills directly for seven months as Interfor moved to quash the subpoena and then began defending against counterclaims filed by Ross on January 11, 2007. However, since February 2007, Interfor alleges that NXIVM has been in default of its obligations under the Indemnity Agreement.

Ten months after Ross filed his counterclaims, Interfor settled the single claim brought against it by Ross in September 2008 for $25,000.

Intefor moved before this Court for Partial Summary Judgment on November 21, 2012 asking this Court to find NXIVM responsible for indemnifying the settlement and attorney's fees related to Ross's litigation with Interfor. (Interfor's Br., ECF No. 462). NXIVM cross moved for Partial Summary Judgment in addition to filing an Opposition Brief on January 19, 2013 (NXIVM's Br., ECF No. 478). Interfor filed a Reply Brief on March 3, 2013 (Interfor's Reply Br., ECF No. 484).

## II. STANDARD OF REVIEW

Summary judgment is granted only if all probative materials of record, viewed with all inferences in favor of the nonmoving party, demonstrate that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. See FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986). The moving party bears the burden of showing that there is no genuine issue of fact. Id. "The burden has two distinct components: an initial burden of production, which shifts to the non moving party if satisfied by the moving party; and an ultimate burden of persuasion, which always remains on the moving party." Id. The nonmoving party "may not rest upon the mere allegations or denials of his pleading" to satisfy this burden, but must produce sufficient evidence to support a jury verdict in his favor. See FED. R. CIV. P. 56(e); see also Matsushita Elec.

3

Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "In determining whether there are any issues of material fact, the Court must resolve all doubts as to the existence of a material fact against the moving party and draw all reasonable inferences - including issues of credibility - in favor of the nonmoving party." Newsome v. Admin. Office of the Courts of the State of N.J., 103 F. Supp.2d 807, 815 (D.N.J. 2000), aff'd, 51 Fed. App'x 76 (3d Cir. 2002) (citing Watts v. Univ. of Del., 622 F.2d 47, 50 (D.N.J. 1980)).

## III.  DISCUSSION

Interfor seeks indemnity from NXIVM for the settlement of Ross's cross-complaint against Interfor. The central issue of fact in question here is whether Ross's cross-complaint was based on work within the scope of the contract between Interfor and NXIVM, and is therefore subject to the indemnity clause, or whether as NXIVM contends, Ross's cross-complaint is based on actions Interfor undertook without NXIVM's authorization.

The Court finds that a genuine issue of material fact exists in whether Interfor's actions with regards to the Ross investigation were approved by NXIVM. As the indemnity agreement is "limited to that part of such investigation, or any part thereof, which was requested and/or agreed to by NXIVM/ESP or disclosed to NXIVM/ESP by Interfor without any objections thereto by NXIVM/ESP," it is material to this summary judgment motion whether NXIVM objected to the work Interfor undertook on its behalf.

The more significant material facts which are hotly disputed between the parties are: whether NXIVM personnel never objected to Interfor's work[2], whether NXIVM requested the Ross investigation[3]; whether NXIVM suggested the *ex parte* contact with Ross[4]; whether Interfor conducted

---
[2] (Interfor's Statement of Material Facts ¶¶ 23, 52, 54, 56, 557, 67, 68, 72, 108, 110, 111).
[3] (Id. at ¶¶ 27, 35, 36).

4

a raid of Ross's garbage[5]; whether NXIVM ratified Interfor's conduct[6]; whether Interfor delivered a report on Ross that reported on Ross's activities[7]; and whether Interfor engaged in illegal activity[8].

Interfor's evidence that they were authorized to undertake the methods and means of the Ross investigation is directly contradicted by NXIVM's evidence that they continually objected to Interfor's work. The conduct in question relates to the expansion of Interfor's work into investigating Ross. Interfor claims that Kristen Keeffe ("Keeffe") and Joseph O'Hara ("O'Hara") were both vested with authority to direct Interfor on behalf of NXIVM, and that all the acts in question were either requested by or disclosed to NXIVM and its agents. Specifically, Interfor cites to Nancy Salzman ("Salzman") and Keeffe's testimony as evidence that NXIVM and its employees were aware of the meeting between Ross and Interfor, and that NXIVM was aware of the planned meeting, understood its purpose, and were satisfied that it had "served its purpose." (Interfor's Br. 21-22); (See Salzman Dep. 531:8-17, June 8-10, 2009 ("Salzman Dep."); Keeffe Dep. 150:6-152:10 Oct. 12-14, 2008 ("Keeffe Dep."); Keeffe's Resp. to Interrog. 8, Feb. 18, 2009 ("Keeffe's Resp. to Interrog.").

Keeffe stated in her deposition that she knew that Interfor was collecting Ross's garbage at the time that the investigative technique was being employed. (Keeffe Dep. 359:12-360:1; Keeffe Int. Resp. 5). Interfor also cites to Salzman's deposition, where she stated that NXIVM authorized Interfor to investigate what statements Ross was making about NXIVM and to whom he was making them.(Salzman Dep. 446:3-16).

With regard to whether NXIVM and its employees ever objected to Interfor's course of action, Interfor states "during their depositions, Raniere, Salzman and Keeffe were each repeatedly asked whether they objected to anything that Interfor did and whether they communicated any objection to

---

[4] (Id. at ¶¶ 38-40, 58).
[5] (Id. at ¶¶ 70, 106, 107).
[6] (Id. at ¶¶ 66, 74).
[7] (Id. at ¶ 70).
[8] (Id. at ¶¶ 99-104).

5

Interfor. These witnesses uniformly admitted that they did not." (Interfor's Br. 24); (See Raniere Dep. 318:9-319:14; Salzman Dep. 42:8-23; 75:9-21; 75:25-76:11; 90:22-91:9; 440:10-441:8; 531:8-17; Keeffe Dep. 157:7-10; 165:14-166:11.) Additionally, in its Opposition Brief, NXIVM admits that it "swallowed its concerns and proceeded with Interfor's work" and agreed to proceed with the Ross investigation. (NXIVM's Opp'n Br. 15).

NXIVM counters by arguing that they objected several times to Interfor. NXIVM argues "because every single thing that Ross complains of against Interfor is an action to which, at some point, NXIVM objected to, the indemnity agreement says that no indemnity applies." (NXIVM's Opp'n Br. 18).

NXIVM claims that it told Interfor that it objected to Interfor investigating Ross instead of looking into the Snyder disappearance. (Keeffe Dep. 178:14-179:3; 145:3-146:8 181:14-182:14, 133:6-134:2; O'Hara Dep. 268:19-269:8; Salzman Dep. 42:8-42:21). NXIVM argues that "when it appeared to Interfor that it was going to be terminated over the Snyder investigation, so as to justify the size of its bills, Interfor 'pitched' to NXVIM a lie that Interfor's president Juval Aviv had talked to Ross and that Interfor had a surprise report to deliver about Ross." (NXIVM's Additional Statements of Material Facts ¶140).

NXIVM also claims that the proposal to contact Ross came over the protests of NXIVM's litigation counsel made directly to Interfor. (Keeffe Decl. ¶ 6; Aviv Decl. 284:10-286:26 (Aviv and Moody were present when NXIVM's lawyers told them they couldn't participate in a meeting with Ross because "he's represented by counsel"); O'Hara Dep. 261:20-263:18. Keeffe states in her deposition that NXIVM expressed a lot of concerns of Interfor's work while the work was progressing. (Keeffe Dep. 155:12-157:7).

Salzman claims she directed NXIVM to object to Interfor's work after the engagement had

6

ended. NXIVM said to Interfor in 2007: "[NXIVM] believes that Interfor's conduct in connection with it's [sic] investigation went beyond what the parties intended would be done and beyond what NXIVM authorized Interfor to do…" (Landy Ex. 18, Oct. 19, 2007, 21).

NXIVM also alleges that they were concerned with Interfor's work and that Interfor after being given objections about unnecessary investigation would "create another seemingly [sic] story about things that were being done to NXIVM," that was false, but calculated to induce NXIVM to spend more. (NXIVM's Additional Statements of Material Facts ¶150).

It is exceedingly clear to this Court that summary judgment at this stage would be inappropriate. The issues the parties ask this Court to dispose of turn exclusively on questions of fact. Thus both parties' motions must be denied.

## IV. CONCLUSION

For the reasons stated above, Interfor's Motion for Partial Summary Judgment and NXIVM's Cross-Motion for Partial Summary Judgment are **denied.** An appropriate Order accompanies this Opinion.

Dennis M. Cavanaugh, U.S.D.J.

Date: June 26, 2013
Original: Clerk's Office
cc: Hon. Mark Falk, U.S.M.J.
All Counsel of Record
File

7