NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| NXIVM CORPORATION, formerly known as EXECUTIVE SUCCESS PROGRAMS, INC., and FIRST PRINCIPLES, INC., | Hon. Dennis M. Cavanaugh |
| Plaintiffs, | OPINION |
| v. | Civil Action No. 06-cv-1051 (DMC)(MF) |
| ESTATE OF MORRIS SUTTON, ROCHELLE SUTTON, THE ROSS INSTITUTE, RICK ROSS a/k/a "RICKY ROSS", STEPHANIE FRANCO, PAUL MARTIN, PH.D., and WELLSPRING RETREAT, INC., | |
| Defendants. | |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon the Motion of the Estate of Morris Sutton and Rochelle Sutton (collectively the "Sutton Defendants") for Summary Judgment and the Motion of Stephanie Franco ("Franco") for Summary Judgment. Pursuant to FED. R. CIV. P 78, no oral argument was heard. Based on the following and for the reasons expressed herein, Franco's Motion for Summary Judgment is **denied** and the Sutton Defendants' Motion for Summary Judgment is **granted in part and denied in part**.

1

## I. BACKGROUND[1]

### A. Factual Background

#### 1) The Parties

Plaintiff NXIVM Corporation ("NXIVM") was formerly known as Executive Success Programs, Inc. NXIVM's primary business involves conducting Executive Success training programs designed primarily for managers, chief executives, and other business professionals. Plaintiff First Principles, Inc. ("First Principles") has developed many of the proprietary materials that are used by NXIVM in its business. NXIVM has a license agreement with First Principles for the trade secret and patent pending technology underlying the work. Both NXIVM and First Principles are corporations formed and existing under the laws of the State of Delaware and are authorized to do business in the State of New York, with their principal places of business located at the same address in Albany, New York. Plaintiffs' programs provide training in areas such as logical analysis and problem-solving skills, and are based primarily on the Rational Inquiry™ system developed by Keith Raniere. The Rational Inquiry™ theory and practice allegedly involves analyzing and optimizing how the mind handles data.

The Sutton Defendants are individuals residing in the state of New Jersey. Franco, daughter of Morris Sutton, is also an individual residing in the state of New Jersey.

#### 2) Michael Sutton and NXIVM

Michael Sutton is the son of the Sutton Defendants and the half-brother of Franco. Michael Sutton enrolled in one of Plaintiffs' courses in the fall of 2000 and eventually became one of Plaintiffs' coaches. Plaintiffs allege that Michael Sutton turned to NXIVM in order to help him deal with the stress of living a "double life," as he was concealing that fact that he had a

---

[1] The facts from this section are taken from the parties' pleadings.

2

non-Sephardic girlfriend and had fathered a child with her.

### 3) Franco and NXIVM

Franco is a former participant of Plaintiffs' training programs. Like Michael Sutton, Franco was accepted into several increasing levels of Plaintiffs' coaching program to learn the Rational Inquiry™ method. From this additional training, Franco acquired portions of Plaintiffs' protected materials that are available only through the coaching program to clients who represent their intent to become trainers exclusively for Plaintiffs. Before attending the classes, Franco signed a short document that stated that she would return all course materials and would not copy, duplicate, transmit, teach, or otherwise use the methods learned in NXIVM's classes (the "Short-Form Agreement"). Plaintiffs also require students to sign a seven-page confidentiality agreement before taking classes (the "Long-Form Agreement"). Franco claims that she never signed the Long-Form Agreement.

### 4) The Sutton Defendants' Intervention with Michael Sutton

Rick Ross is the founder and Executive Director of The Ross Institute. Ross holds himself out as "an internationally known expert on cults and other radical, extreme and often unsafe groups." Ross earns revenue primarily from conducting "cult deprogrammings" of individuals and through the sales of related products such as audio and video tapes. Ross was hired by the Sutton Defendants to conduct an intervention with Michael Sutton concerning his association with NXIVM.

Beginning in November 2002, Ross conducted several interventions with Michael Sutton. The first intervention took place over the course of five days, during a family vacation in Florida. The second intervention took place at the Sutton Defendants' home in New Jersey. Franco was present during the New Jersey intervention. During the interventions, Ross allegedly asked

3

Michael Sutton to provide him with Plaintiffs' protected materials. Michael Sutton refused, informing Ross that the materials were confidential. At some point, Ross obtained from Franco a copy of all of Plaintiffs' protected materials in her possession, allegedly in violation of Franco's confidentiality agreement with Plaintiffs. However, it is disputed whether Franco directly gave the materials to Ross, or instead gave them to Jeffrey Sutton, her half-brother, who later provided Ross with the materials without her knowledge.

### 5) Ross's Website and the Martin/Hochman Articles

Michael Sutton eventually told his father that he would not disassociate from Plaintiffs. Morris Sutton allegedly responded angrily and indicated to Michael that he would do whatever was necessary to destroy Plaintiffs' business. Plaintiffs allege that the Sutton Defendants directed Ross "to engage in a series of activities . . . to disparage and damage Plaintiffs' business." Such acts purportedly included obtaining and distributing Plaintiffs' protected materials to others and hiring individuals to write articles disparaging Plaintiffs' and their programs.

The Sutton Defendants allegedly hired Paul Martin, P.h.D. and John Hochman, M.D. to provide negative and damaging written analyses of Plaintiffs and Plaintiffs' training courses that conclude that Plaintiffs are a "cult" or are "cult-like." Ross, at the direction of the Sutton Defendants, allegedly provided all or some of Plaintiffs' protected materials to Martin and Hochman. Specifically, Defendant Martin authored two pieces: *A Critical Analysis of the Executive Success Programs, Inc.*, and *Robert Jay Lifton's Eight Criteria of Thought Reform as Applied to the Executive Success Programs* ("the Martin articles"). Hochman authorized a piece entitled, *A Forensic Psychiatrist Evaluates ESP* ("the Hochman article"). Plaintiffs allege that both pieces mischaracterize Plaintiffs' materials and training programs and mislead readers regarding the nature of Plaintiffs and their programs. Both the Martin articles and the Hochman

4

article were published on Ross's websites.

## B. **Procedural Background**

This case was originally commenced as two separate actions in the Northern District of New York in August 2003, and alleged that Franco, among others, violated the Lanham Act and is liable for copyright infringement. Both actions sought *ex parte* temporary restraining orders to remove the Hochman and Martin articles from the Ross Institute's websites. The District Court denied both *ex parte* applications. Additionally, the District Court denied Plaintiffs' applications for preliminary injunctions. The Second Circuit Court of Appeals affirmed the District Court's denial of the preliminary injunction applications, finding that Plaintiffs could not demonstrate a likelihood of success on the merits. See NXIVM v. Ross Inst., 364 F.3d 471 (3d Cir. 2004). The United States Supreme Court denied Plaintiffs' petition for a writ of certiorari.

Thereafter, the District Court granted Defendant Franco's motion to dismiss Plaintiffs' Lanham Act, Copyright Act, tortious interference and common-law fraud claims. Additionally, the District Court granted in part and denied in part Plaintiffs' motion to amend their pleadings and to add the Suttons as defendants. Specifically, the District Court denied Plaintiffs leave to plead fraud, conversion and prima facie tort claims and granted Plaintiffs leave to assert breach of contract and misappropriation of trade secrets claims. The District Court denied Plaintiffs leave to file claims against the Sutton Defendants for conversion, Lanham Act violations, unfair competition and prima facie tort. Plaintiffs were granted leave to assert claims against the Sutton Defendants for product disparagement, tortious interference with contract, interference with prospective contractual relations and copyright infringement.

On April 19, 2005, Plaintiffs filed their Amended and Consolidated Complaint. Thereafter, the District Court granted the Sutton Defendants' motion to transfer this action

pursuant to 28 U.S.C. § 1404(a) and 28 U.S.C. § 1406. On June 27, 2007, this Court dismissed Plaintiffs' product disparagement claim, one of Plaintiffs' tortious interference with contractual relations claims, and Plaintiffs' tortious interference with prospective economic advantage claim against all Defendants, and dismissed Plaintiffs' copyright infringement claim against the Sutton Defendants. This Court denied Plaintiff's Motion to revise that ruling.

The Sutton Defendants and Franco filed the instant Motions for Summary Judgment on May 10, 2013 (ECF Nos. 485-86). Plaintiffs filed Oppositions on July 31, 2010. Defendants filed Replies on October 14, 2013. Plaintiffs filed a Sur-Reply to both Oppositions on December 2, 2013.

## II. **STANDARD OF REVIEW**

Pursuant to Fed. R. Civ. P. 56(c), summary judgment must be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v Catrett, 477 U.S. 317, 323 (1986). A genuine issue of material fact exists only if sufficient evidence is presented favoring the nonmoving party for a jury to return a verdict for that party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party." Red Roof Franchising, LLC v. AA Hospitality Northshore, LLC, 877 F. Supp. 2d 140, 147 (D.N.J. 2012) (citing Anderson, 477 U.S. at 256-57). To do so, "[a] party opposing summary judgment must do more than just rest upon mere

allegations, general denials, or vague statements." Id. (citing Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001)). Accordingly, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## III. DISCUSSION

### A. Misappropriation of Trade Secrets Claim against Franco and the Sutton Defendants

#### 1) Choice of Law

Choice of law in a diversity case is governed by the rules of the forum state. Warriner v. Stanton, 475 F.3d 497, 499–500 (3d Cir. 2007). New Jersey employs the "most significant relationship" test to choice-of-law questions, which requires, in the first instance, a determination of whether an actual conflict exists. Nafar v. Hollywood Tanning Sys., Inc., 339 F. App'x 216, 220 (3d Cir. 2009). Factors for this Court to examine are i) where the injury occurred; 2) where the conduct causing the injury occurred; 3) the "domicile, residence, nationality, place of incorporation and place of business of the parties;" and 4) the place where the relationship between the parties is centered. P.V. ex rel. T.V. v. Camp Jaycee, 962 A.2d 453, 461-62 (2008). The parties concede that an actual conflict exists between New Jersey and New York law as to Plaintiffs' misappropriation of trade secrets claim because New Jersey law requires that the trade secret was disclosed to a competitor and that the competitor used the trade secret.[2] Upon analyzing the factors set forth in Camp Jaycee, this Court finds that New York law should apply to Plaintiffs' misappropriation of trade secrets claim against Franco because her alleged signing of the contract with NXIVM took place in New York, she received the course materials that she allegedly misappropriated in New York, her relationship with NXIVM is centered on the classes

---

[2] There is no choice of law issue with the other claims addressed in this Opinion.

7

she took in New York, and she allegedly injured a company that has its principal place of business in New York. However, this Court finds that New Jersey law should apply to Plaintiffs' misappropriation of trade secrets claim against the Sutton Defendants, as they have no real connection with New York and their alleged wrongful actions all occurred in New Jersey.

**2) Franco**

To establish a claim of misappropriation of trade secrets in New York, a plaintiff must show: "(1) that it possessed a trade secret, and (2) that the defendants used that trade secret in breach of an agreement, confidential relationship or duty, or as a result of discovery by improper means." Medtech Products Inc. v. Ranir, LLC, 596 F. Supp. 2d 778, 787 (S.D.N.Y. 2008) (citation omitted). A trade secret is "any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it." Ashland Mgmt. Inc. v. Janien, 82 N.Y.2d 395 (1993) (citation omitted). While New York courts consider a number of factors in determining whether information qualifies as a trade secret, "the most important consideration is whether the information was kept secret." Sasqua Grp., Inc. v. Courtney, No. 10-528, 2010 WL 3613855, at *16 (E.D.N.Y. Aug. 2, 2010) report and recommendation adopted, No. 10-CV-528, 2010 WL 3702468 (E.D.N.Y. Sept. 7, 2010).

First, Franco asserts that Plaintiffs' course materials are not trade secrets, arguing that the materials are publicly available because they have been registered with the United States Copyright Office ("USCO"), have been made public in patent applications, or were made part of a public record in a court proceeding. In response, Plaintiffs submitted a declaration of expert Nancy Salzman, who set forth charts showing that certain information published in the Martin articles and the Hochman article were never made public. Defendants ask this court to reject

8

Salzman's deposition under the "sham affidavit doctrine."[3] This doctrine allows a trial court to disregard an affidavit that contradicts a prior deposition. Jiminez v. All Am. Rathskeller, Inc., 503 F.3d 247, 253 (3d Cir. 2007). However, the Third Circuit takes a "flexible approach" to this doctrine and has stated that "not all contradictory affidavits are necessarily shams." Id. at 254. This Court declines to disregard Salzman's, as she has explained that her previous inconsistent statements were accidental. For example, when she offered her opinion that certain materials were filed with the USCO, she did this upon the mistaken belief that a copyright stamp appearing on a document implies registration.

Further, this Court finds that a number of issues of fact exist as to whether Plaintiffs otherwise took precautions to maintain the secrecy of their alleged trade secrets. For example, Plaintiffs dispute Franco's allegation that NXIVM virtually never asks students to return their course materials. Further, while Franco claims that NXIVM distributes its coaching materials without taking any measures to ensure that these materials will be returned, Plaintiffs claim that they vigorously pursue former coaches who do not return their materials. Finally, while Franco claims that NXIVM distributed course materials to her even though she never signed a Long-Form Agreement, Plaintiffs' witnesses claim that Franco did in fact sign this agreement.

This court also finds that issues of material fact exist with respect to the second element of misappropriation of trade secrets, particularly whether a contract existed between Franco and Plaintiffs. This issue is addressed in more detail below. Accordingly, Franco's Motion for Summary Judgment for Plaintiffs' misappropriation of trade secrets claim is denied.

---

[3] This argument is actually raised in the Sutton Defendants' Reply. However, as the moving papers of Franco and the Sutton Defendants consistently reference to one another, this Court will consider this argument in deciding Franco's Motion.

### 3) The Sutton Defendants

In New Jersey, to state a claim for misappropriation of trade secrets, a plaintiff must establish the following elements:

> (1) A trade secret exists; (2) the information comprising the trade secret was communicated in confidence by plaintiff to the [defendant]; (3) the secret information was disclosed by that [defendant] and in breach of that confidence; (4) the secret information was acquired by a competitor with knowledge of the [defendant's] breach of confidence; (5) the secret information was used by the competitor to the detriment of plaintiff; and (6) the plaintiff took precautions to maintain the secrecy of the trade secret.

Jurista v. Amerinox Processing, Inc., 492 B.R. 707, 771 (D.N.J. 2013).

The Sutton Defendants correctly argue that it is undisputed that Plaintiffs cannot prove elements five and six, as they have not shown that a competitor acquired and used Plaintiffs' trade secrets. Franco and the Sutton Defendants clearly are not competitors of NXIVM. As for Ross, Plaintiffs have not set forth sufficient evidence that Ross is a competitor and the Second Circuit has already stated that Ross is "not trying to get into the relevant market that is NXIVM's central business concern." NXIVM, 364 F.3d at 482. Accordingly, the Sutton Defendants' Motion for Summary Judgment for Plaintiff's misappropriation of trade secrets claim is granted.

### B. Breach of Contract Claim against Franco

Plaintiffs claim that Franco is liable for breach of contract because she violated the conditions of the Short-Form and Long-Form Agreements. Franco first argues that she never signed the Long-Form Agreement. This is clearly a disputed fact, as several of Plaintiffs' witnesses claim otherwise. Second, Franco argues that the agreements are unenforceable as against public policy because they attempt to protect pieces of information that are not trade secrets. However, there are several issues of fact surrounding whether the course materials are trade secrets, such as whether NXIVM allowed its students to keep the course materials after they left. Finally, there are numerous issues of fact as to whether NXIVM was damaged by

Franco's actions. Accordingly, Franco's Motion for Summary Judgment for Plaintiffs' breach of contract claim is denied.

### C. Tortious Interference with Contract Claim against the Sutton Defendants

To state a claim for tortious interference with contract, a plaintiff must show "(1) an existing contractual relationship; (2) intentional interference with that relationship; (3) the malicious nature of the interference; and (4) damages resulting from the interference." Matrix Essentials, Inc. v. Cosmetic Gallery, Inc., 870 F. Supp. 1237, 1247 (D.N.J. 1994) aff'd, 85 F.3d 612 (3d Cir. 1996). Here, all four elements involve disputed facts. First, as discussed above, the parties dispute whether Franco signed the Long-Form Agreement and whether the Long-Form and Short-Form contracts are enforceable. Second, the parties dispute whether the Sutton Defendants had knowledge of Franco's purported agreement with NXIVM. Third, the Sutton Defendants argue that any actions taken by them were done with the intention of helping Michael Sutton, whereas Plaintiffs argue that the Sutton Defendants were motivated by a desire to "destroy" NXIVM. Finally, the parties dispute whether Plaintiffs have the ability to show that they suffered any damages as a proximate result of the Sutton Defendants' conduct. Accordingly, the Sutton Defendants' Motion for Summary Judgment is denied for Plaintiffs' tortious interference with contract claim.

### IV. CONCLUSION

For the foregoing reasons Franco's Motion for Summary Judgment is **denied** and the Sutton Defendants' Motion for Summary Judgment is **granted in part and denied in part**.

Dennis M. Cavanaugh, U.S.D.J.

Date: December 18, 2013
Original: Clerk's Office
cc: Hon. James B. Clark U.S.M.J.
All Counsel of Record
File

11